UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **JAWBONE INNOVATIONS, LLC,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL NO. W-23-CV-00158-ADA** |
| | § | |
| **META PLATFORMS, INC.,** | § | |
| *Defendant.* | § | **PUBLIC VERSION** |

## ORDER DENYING DEFENDANT'S MOTION TO TRANSFER

### I.  INTRODUCTION

Before the Court is Defendant Meta Platforms, Inc.'s ("Meta") Opposed Motion to Transfer Venue to the Northern District of California. ECF No. 28. The motion was filed on November 21, 2023. *Id*. After completing venue discovery, Plaintiff Jawbone Innovations, LLC's ("Jawbone") responded in opposition to the motion on April 5, 2024. ECF No. 64. Meta replied in support of the motion on April 19, 2024. ECF No. 70. And Jawbone filed a sur-reply in further opposition to the motion on April 26, 2024. ECF No. 74. After considering the relevant facts, the parties' arguments, and the applicable law, the motion is **DENIED**.

### II.  BACKGROUND

In its Complaint, Jawbone claims Meta infringed on U.S. Patent Nos. 8,019,091 ("the '091 patent"); 7,246,058 ("the '058 patent"); 10,779,080 ("the '080 patent"); 11,122,357 ("the '357 patent"); 8,467,543 ("the '543 patent"); 8,503,691 ("the '691 patent"); 8,321,213 ("the '213 patent"); and 8,326,611 ("the '611 patent") (collectively, "the Meta patents"), which relate to noise suppression technology. ECF No. 1 at ¶ 7–14; 20, 23, 25, 27, 29. The accused products include

Meta's Quest products, Portal products, and Smart Glasses. *See* ECF No. 28 at 2 (listing specific accused products); ECF No. 64 at 2.

### III. <u>LEGAL STANDARD</u>

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit—here, the Fifth Circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides in part that "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought . . . " *Id.* "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under § 1404(a) is whether a civil action "'might have been brought' in the destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) [hereinafter *Volkswagen II*]. If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (footnote omitted). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *Volkswagen I*] (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the

familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The moving party has the burden to prove that a case should be transferred for convenience. *Volkswagen II*, 545 F.3d at 314. The burden is not simply that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 314–15. While "clearly more convenient" is not the same as the "clear and convincing" standard, the moving party must still show more than a mere preponderance. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show an individual factor clearly favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

## IV. <u>ANALYSIS</u>

### A. Threshold Determination

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the Northern District of California ("NDCA"). Neither party disputes that venue could be proper in the NDCA. Meta operates a regular and established place of business in the Bay Area within the NDCA. ECF No. 28 at 2, 9. This Court therefore finds that venue would have been proper in the NDCA had the suit originally been filed there. Thus, the Court now analyzes the private and public interest factors to determine whether the NDCA is a clearly more convenient forum than the Western District of Texas ("WDTX").

### B. Private Interest Factors

The private interest factors are (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*) (citing *Volkswagen I*, 371 F.3d at 203).

### i. The Cost of Attendance and Convenience for Willing Witnesses

The most significant factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). According to Fifth Circuit law, if the distance between a current venue and a proposed venue is more than 100 miles, the inconvenience to witnesses increases in direct relationship to the additional distance they must travel if the matter is transferred. *Volkswagen II*, 545 F.3d at 317. But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" in cases where witnesses would be required to travel a significant distance no matter what venue they testify in. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). According to the Federal Circuit, time is a more important metric than distance. *Id.* Yet the Federal Circuit has also held that when willing witnesses will have to travel a significant distance to either forum, the slight inconvenience of one forum in comparison to the other should not weigh heavily on the outcome of this factor. *In re Apple*, 979 F.3d at 1342. More recently, the Fifth Circuit has noted that it is improper to ignore the rule, the implication being that

it should always apply. *In re TikTok*, 85 F.4th at 361–62.

Meta argues that this factor strongly favors transfer. According to Meta, most of the employees with relevant knowledge about the accused products and features are located in the NDCA and Washington. *See* ECF No. 28 at 1, 13 ("Meta's witnesses with technical, financial, and marketing information relevant to this action work in California (most in NDCA) or Washington State, and would find it much more convenient to testify in NDCA."). Meta explains that there are three Meta teams responsible for the Accused Features (████████████████████████████). ECF No. 28 at 3, 10. ██████████████████████████████████████████████ ███████████████████████████████████████████████████. *Id*. at 3. According to Meta, these three teams are based in the NDCA and Redmond, Washington. *Id*.

Meta specifically identifies ten willing witnesses in NDCA: ████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████. ECF No. 70 at 7; Evans Declaration, ECF No. 28-1 at 5–11. Meta lists an additional six willing witnesses for which it alleges the NDCA is a more convenient forum than the WDTX: ████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████. ECF No. 70 at 7. While the Court finds that the presence of many of these witnesses in California and Washington would weigh in favor of transfer, there are a few exceptions. For instance, as Jawbone points out, ██████ ██████ is a relevant witness for technology that is no longer accused (e.g., physical VADs). ECF

5

No. 64 at 9. Additionally, █████████, as an Illinois resident, resides closer to WDTX than to the NDCA. In accordance with the 100-mile rule, the presence of witnesses in Illinois would weigh against transfer because these witnesses are closer to Waco than the NDCA. *See Volkswagen II*, 545 F.3d at 317.

In its response, Jawbone identifies at least twenty Texas-domiciled Meta employees:



. ECF No. 64 at 6–8. Jawbone identifies an additional four Meta employees with relevant information located closer to the WDTX than the NDCA: ███████████████

███████████████████████████████████████████████████████

. *Id*. at 8.

Jawbone points to this Court's Order Denying Defendant's Motion to Transfer in *Immersion Corp. v. Meta Platforms Inc.*, No. 6:22-cv-541-ADA, ECF No. 84 (W.D. Tex. May 5, 2023) (hereinafter "*Immersion*"), where this Court found at least 22 willing Meta witnesses for which the WDTX was more convenient than the NDCA. *Immersion* at 20. Notably, those Texas-domiciled Meta employees were found to have relevant information regarding the same Quest products accused in this case. *See id*. at 2, 8–17. Jawbone lists at least twelve of those same witnesses that it insists are "equally relevant here for the same reasons" pertaining to audio functionality █████

███████████████████████████████████████████████████████

███████████████████████████████). ECF No. 64 at 6. Meta disputes these witnesses as having any relevance, claiming that they were "familiar with the haptics at issue in *Immersion*—not the audio functionality (nor specifically, audio *capture* functionality) at issue

here." ECF No. 70 at 2 (emphasis in original).  Because the Court has already previously found these twelve individuals have relevant technical information about development on some of the Accused Products (Meta's virtual reality systems, such as the Meta Quest 2 and Quest Pro products), the Court agrees with Jawbone that these witnesses are relevant. ECF No. 64 at 6–8; *see Immersion* at 11–17. This Court does not ignore that different (haptic) functionality was at issue in *Immersion*, whereas audio functionality is at issue here. However, the Court agrees with Jawbone that these twelve individuals have relevant experience in both cases. For instance, Mr. Nelson, Product Design Manager for Reality Labs, was previously found to be a relevant technical witness based on his "experience focused on the operating system for the Accused Products." *Id*. at 12. Mr. Veldhuisen, who does "revenue accounting for the Quest 2" likely has relevant financial information. *Id*. at 13. And Mr. Hooper, as Director of Development, Oculus VR, was found relevant regarding his knowledge of "engineering and design of the functionality of the VR products." *Id*. at 14. The remaining witnesses are similar in this regard. *See also id*. at 13–15 (finding witnesses relevant based on marketing and sales knowledge, based on experience as Lead Counsel, and financial knowledge). Nothing in this Court's prior Order confines these witnesses to haptics functionality.

Meta further argues that none of the *Immersion* personnel are relevant to the Accused Features at issue in this case and provides supplementary interrogatory responses to this extent. *Id*.; ECF No. 64-13 at 16–21. However, the information Meta provides as to these individuals is generally too specific and/or not applicable. For instance, Meta claims that these individuals do not "work on any Accused Features of the Accused Products." *Id*. But for the marketing, sales, and finance witnesses, this statement is not particularly telling. Further, Meta's responses do not necessarily refute the witnesses' relevance. For instance, for ███████████████, Meta states

7

that their roles are not "product-specific," but does not specifically refute their knowledge as to the Accused Products. *Id*. at 17, 19. The same is true with ▮▮▮▮▮▮▮, who Meta claims has a role that is "not specific to any audio components in Meta's products." *Id*. at 19. This description again does not necessarily refute his knowledge in relation to the Accused Products. As to other witnesses, Meta asserts that they have experience with irrelevant areas of the Accused Products (outside of "audio functionality"). But for certain individuals, Meta asserts they do not "develop code or algorithms in Meta's products, including any audio capture algorithms for noise suppression." *See id*. at 17–19. The varying degrees of specificity are curious. Indeed, depending on the degree of generality, witnesses may or may not be relevant. Considering the contrary evidence tying these individuals to relevant knowledge of the Accused Products, the Court cannot take these statements as dispositive as to the witnesses' ultimate relevance.

Jawbone further identifies Texas-domiciled individuals that are members of the same groups this Court found relevant in *Immersion* with specific audio functionality experience. *See* ECF No. 64 at 6–8 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Based on these employees' experience and relation to audio functionality of the Accused Products, the Court finds that these witnesses are also potentially relevant. *See id*. (noting specific audio-related experience and participation in audio-related working groups). Meta critiques the usage of membership in Workplace groups, source code check-ins, and LinkedIn profiles, that this reliance is too "vague and speculative." ECF No. 70 at 3–4. Yet the workplace groups are helpful in identifying employees' experience/knowledge as well as their interests. It is of probative value when determining what knowledge employees might possess, even if these descriptions are high-level.

Jawbone further identifies two of its own witnesses, Daniel Setton (Jawbone's Manager),

and Dr. Greg Burnett (Jawbone's Chief Scientist and named inventor on all asserted patents), for whom the WDTX is more convenient than the NDCA. ECF No. 64 at 5–6. Indeed, Dr. Setton resides in New Jersey, and Dr. Burnett resides in Omaha, Nebraska. ECF No. 64-2 at 3; ECF No. 64-3 at 2. As Jawbone notes in its brief, the increased mileage for these witnesses alone (over 700 miles for Dr. Burnett, and 1,000 miles for Mr. Setton) weighs against transfer. *See* ECF No. 64 at 6. Meta does not dispute the relevance of these two witnesses.

Taking all the briefing and exhibits into consideration, the Court finds the record rather unclear as to the relevance of most individuals cited by both parties. On one hand, Jawbone has identified with particularity 26 witnesses who would find Waco to be more convenient. While the Court finds the twelve *Immersion* witnesses and Texas-domiciled Meta employees to be poten-tially relevant, the Court does not overlook that Meta has provided declarations and interrogatory responses disputing the relevance of many of Jawbone's purported witnesses. Thus, despite the numerous individuals cited by Jawbone, the Court does not find that the scales are tipped signifi-cantly in favor of Jawbone on this factor alone. On the other hand, Meta has identified at least 18 individuals, based on relevant teams, for whom the NDCA would be more convenient. But it is not clear whether Meta conducted an in-depth investigation as to where members of relevant teams are located across the United States (including within this district), and whether Meta's list of relevant personnel is complete given Jawbone's contentions. *See* ECF No. 64, Ex. F at 36:5–7, 68:8–25, 82:17–21, 95:22–25. Indeed, many of the witnesses listed by Jawbone appear to have relevant experience for the accused functionality on the Accused Products. And the Court is skep-tical that 44 witnesses (totaling individuals listed by both Parties) will be necessary to travel to trial in either forum. Thus, the high relevance and number of witnesses who would find the WDTX more convenient weighed against the existence of various teams and relevant witnesses in the

NDCA—or closer to the NDCA—leads the Court to find this factor neutral.

### ii.   The Relative Ease of Access to Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is relative ease of access, not absolute ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d at 1340 (citing *In re Genentech*, 566 F.3d at 1345). The Court acknowledges that the Fifth Circuit's decision in *In re Planned Parenthood* suggests a shift in the analysis of this factor. The Fifth Circuit recently agreed with a district court that concluded that held this factor neutral when electronic evidence was equally accessible in either forum. *In re Planned Parenthood Fed'n of Am., Inc.,* 52 F.4th 625, 630 (5th Cir. 2022). The Fifth Circuit held that "[t]he location of evidence bears much more strongly on the transfer analysis when . . . the evidence is physical in nature." *Id*. But the Federal Circuit has held that it is an error to conclude this factor is neutral because electronic documents are easily accessible in both forums. *In re Apple, Inc.*, No., 2022 WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022). As much as these two holdings can be reconciled, the Court concludes that the location of physical evidence is more important to this analysis than the location of where electronic documents are typically accessed.

Meta argues that this factor strongly favors transfer because the employees "responsible for development, engineering, and management of the hardware and software components of the Accused Features," as well as the marketing and finance employees, are predominantly in NDCA, Southern California, and Redmond, Washington. ECF No. 28 at 9–10. Meta further points to

source code for the Accused Features, which it describes as "restricted," and can only be down-loaded from its team in Menlo Park and London. *Id*. Jawbone responds by arguing that its (and third parties') sources of proof are closer to the WDTX than the NDCA, and Meta's sources of proof are accessible from the WDTX. ECF No. 64 at 3. As previously found in *Immersion*, this Court "does not give weight to Meta's assertion that the source code can only be collected and made available in NDCA" or London. *Immersion* at 22. This is true for at least three reasons: (1) this Court previously found that Meta has produced code in litigations outside the NDCA on mul-tiple occasions, (2) many, if not all, of these documents are accessible from any location, and (3) Meta's policy as to producing this information is a self-imposed policy. *See id*; ECF No. 64-4 (noting there are no "specific geographic restrictions on access to [Meta's] documents within the United States"); ECF No. 28 at 5 (discussing Meta teams' usage of shared Google Drives and internal Wikis).

Most importantly, as discussed above, both Jawbone and Meta have identified relevant employees in the NDCA and the WDTX. *See supra* Section IV(B)(i). The Court believes it is likely that these employees are custodians for the relevant electronic documents. *See In re Google LLC*, No. 2021-178, 2021 WL 5292267, *2 (Fed. Cir. Nov. 15, 2021) (holding that it is an error to not "also consider[] the location of document custodians and the location where documents are created and maintained, which may bear on the ease of retrieval"). Additionally, as noted in further detail below, third-party sources of proof—specifically from Qualcomm and NXP (which both have Austin and California offices)—are located both in or near this district and in the NDCA. The Court therefore concludes that, at least in considering technical documentation and third-party ev-idence, this factor is neutral because relevant employees likely create and maintain relevant elec-tronic documents in both forums.

Jawbone further contends that its products for distribution and documents related to the asserted patents, marketing, contracts, distribution, and sales activities are in its Waco office. *Id*. Jawbone points to physical evidence, such as ████████████████████████████ ████████, that are in Omaha, Nebraska. ECF No. 64 at 3. Additionally, Jawbone contends it "houses . . . products for distribution" in its Waco office. *Id*. Thus, while Meta does not point to any physical evidence located in the NDTX (other than documentation), Jawbone provides physical evidence that is closer to, or located in, the WDTX. However, because Jawbone does not provide specifics as to what "products" are in the WDTX, the Court hesitates to give much weight to this assertion. Indeed, from the briefing, the Court cannot accurately determine what physical evidence exists in either forum. Based on relevant sources of proof in both forums, and taking into consideration the uncertainty as to where potential physical evidence is located, the Court ultimately finds this factor neutral. *See Hammers v. Mayea-Chang*, No. 2:19-CV-00181-JRG, 2019 WL 6728446 (E.D. Tex. Dec. 11, 2019), 2019 WL 6728446, at *5 ("When the movant fails to provide the factual foundation that is necessary to evaluate the relative convenience of the present and proposed venues, the Court lacks a basis to conclude that the proposed venue is "clearly more convenient" than the present venue. Put another way, if the facts governing convenience are not clearly set forth, the Court cannot conclude that the proposed venue is 'clearly more convenient.'") (citations omitted).

### iii.   The Availability of Compulsory Process to Secure the Attendance of Witnesses

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed.

R. Civ. P. 45(c)(1)(A), (B)(ii). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, 2019 WL 4743678, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (citing *In re Genentech*, 566 F.3d at 1345). Fifth Circuit law dictates that "the availability of the compulsory process 'receives less weight when it has not been alleged or shown that any witness would be unwilling to testify.'" *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th at 630−31 (quoting *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488 (6th Cir. 2016)); *see also In re TikTok, Inc.*, 85 F.4th at 360 (confirming that "*Planned Parenthood* allows district courts to afford this factor less weight when it has not been alleged or shown that any witness would be unwilling to testify"); *contra In re Pandora Media, LLC*, 2021-172, 2021 WL 4772805, at *3 (Fed. Cir. 2021) ("witness is presumed to be unwilling" when there is no indication that he or she is willing).

Meta again argues that this factor favors transfer. ECF No. 28 at 11. In doing so, Meta enumerates out three categories of potentially relevant third-party witnesses: (1) inventors of the Asserted Patents, (2) prosecution counsel for the Asserted Patents, and (3) third parties related to the development of the Accused Features. *Id*. We now address each in turn.

As to the inventors of the Asserted Patents, Meta argues that four of the six named inventors currently reside in the NDCA. *Id*. at 12. However, at least two of the inventors Meta suggests live in the NDCA (Eric Breitfeller, and Andrew Einaudi) are listed on patents that are no longer asserted in the present case, a fact which Meta does not dispute. Two of the remaining inventors, Alexander Asseily and Gregory Burnett, reside in London, England, and Omaha, Nebraska, respectively. ECF No. 28 at 6; ECF No. 64-2, 64-3. As to the remaining two inventors, Zhinian Jing

and Nicolas Petit, it is not altogether clear where they reside. Meta's briefing does not even mention Petit's location or where his potential residence may be located. Even assuming Mr. Jing and Mr. Petit reside in the NDCA, Meta fails to allege unwillingness to testify as to either inventor.

As to the second category, prosecution counsel, Meta argues that at least five prosecuting attorneys reside in the NDCA. ECF No. 28 at 12. As Jawbone points out in response—and as supported by Meta's own attached Nguyen Declaration—at least one of these attorneys, Richard Gregory, lives in Houston, Texas. ECF No. 28-2 at ¶ 28. Further still, two other attorneys, Scott Kokka and Barbara Courtney, appear to reside in Austin, Texas and Colorado (or more recently, New York), respectively. ECF No. 64 at 13; ECF No. 65-5 at 9. This is undisputed. *See* ECF No. 70 at 8. In fact, in Meta's opening brief, Meta asserts that *no* prosecuting attorneys live in the WDTX. ECF No. 28 at 12. But then in Meta's reply brief, it states that the only "legitimate" witness subject to compulsory process in this district is prosecution counsel, Mr. Kokka, located in Austin. ECF No. 70 at 8. These contradictions make it difficult for the Court to take Meta's statements regarding the residences of potential third-party witnesses at face value. Thus, at most, this Court finds two attorneys (Howard Yuan and Trueman Denny) from the prosecuting counsel may reside in the NDCA. Again, Meta fails to allege unwillingness to testify as to either attorney.

Turning to the third and final category, Meta contends that two "potential non-party witnesses are in NDCA," and that the only non-party involved in developing the Accused Features of the Accused Smart Glasses ███████—is in the NDCA. ECF No. 28 at 12. In response, Jawbone identifies 24 relevant witnesses subject to compulsory process in Texas. These witnesses include six former Meta employees (████████████████████████████████████ ██████████████████████), a list of current and former employees from vendors in the WDTX, including Qualcomm and NXP (Titash R., Hitesh Puri, Suresh Venkumahanti, Eric

14

Jackowski, Nils Peters, Jonathan Phillippe, Adrian Alonso, Haku Sato, Karthik Ramanan, and Aneeket Patkar), and four EssilorLuxottica employees (Elodie Camaret, Joe Ibarra, Scott Smith, and Vishal Keswani). ECF 64 at 10–13.

This Court previously found John Carmack, CTO for Oculus before the acquisition, as possessing "relevant knowledge of the conception, design, and development of accused products that overlap with Oculus technology" in *Immersion*. *Immersion* at 9–10. The Court again finds Mr. Carmack relevant for the same Accused Products in this case. Meta does not provide the Court with any specific reason to discount his relevance. While this Court also found Phillip Dang and Jason Gall to have relevant marketing and financial information about the Accused Products in *Immersion*, the Court again acknowledges Meta's declarations asserting that they are irrelevant in the present case. *See Immersion* at 15–16; ECF No. 70-2. However, since the employees' own work group profiles and public descriptions of their professional roles and experiences *appear* to be potentially relevant, the Court is unable to determine from the parties' briefing their ultimate importance to the Accused Technology in this case. Regarding the last three Meta employees this Court has not previously analyzed, each employee appears to work on the Accused Products in some relevant way (e.g., on audio across Oculus products, marketing for Smart Glasses, and/or data collection related to Ray-Ban Glasses and Quest headsets). ECF No. 64 at 11. Thus, the Court finds these individuals likely have relevant information regarding the Accused Products.

In addressing the Qualcomm and NXP employees, this Court finds at least some of the named individuals to possess relevant information based on public information and LinkedIn profiles. For instance, Titash R., a Qualcomm employee, has "[d]eployed in low power, high performance algorithm-HW co-designed XR devices e.g. RayBan smart glasses and Quest MR headsets." ECF No. 64 at 11. Other Qualcomm and NXP employees, with experience in audio and

video with AR/VR technologies, this Court also finds potentially relevant. *See id*. at 11–12 (noting Hitesh Puri and Nils Peters with audio processing experience at Qualcomm, and Jonathan Philippe, Adrian Alonso, Haju Sato, Karthik Ramanan, and Aneeket Patkar with related experience at NXP). While Meta insists these employees are "random," Meta does not provide the Court any specific reason to discount their relevance. ECF No. 70 at 8. The Court therefore finds that at least some of these named employees from Qualcomm and NXP—vendors located in the WDTX from which Meta sources audio frameworks and audio DSPs for the accused technology—likely have relevant information about the Accused Products.

Lastly, as Jawbone points out, Meta provides the accused Ray-Ban smart glasses in partnership with EssilorLuxottica, the owner of Ray-Ban. ECF No. 64 at 12. Essilor of America (of which EssilorLuxottica is the parent company) is based in Texas, and certain of its employees who possess relevant knowledge of the Accused Smart Glasses are located in Texas as well. *See id*. (noting Texas-based Essilor employees involved with Meta's partnership).

Other than vague and conclusory assertions by Meta, it is not clear from the record whether ███████ is directly involved in development of accused functionality. *See* ECF No. 28 at 12; ECF No. 64 at 13. Thus, the Court finds that the presence of ███████ in the NDCA neither weighs for nor against transfer.

From the evidence at hand, although the Court finds several witnesses with relevant information reside in California, Plaintiff has also shown several third-party witnesses in this district who could also be relevant. Since the number of third-party witnesses located in Texas outweighs the number located in California, the Court finds that this factor weighs slightly against transfer. But since neither party alleged nor provided evidence of unwillingness to testify, this factor receives less weight in the Court's ultimate determination of convenience.

### iv. All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive

When considering the "practical problems that make trial of a case easy, expeditious and inexpensive" factor, courts analyze whether transfer would serve the interest of judicial economy. *Affinity Labs of Tex., LLC v. Samsung Elecs. Co*, No. 6:13-CV-364, 2014 WL 12570501, at *7 (W.D. Tex. June 11, 2014); *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010).

Meta argues that this factor weighs in favor of transfer because the case is still at the early stages of litigation, and as such, the Court has not yet spent significant time and resources on it. ECF No. 28 at 13. Additionally, Meta argues this factor favors transfer considering the location of witnesses and the lack of Meta's presence in the Western District. *Id*. at 13–14. Jawbone responds that this Court has already conducted claim construction for many of the terms at issue. ECF No. 64 at 14; *see Jawbone Innovations, LLC v. Google LLC*, No. 6:21-cv-00985-ADA, ECF No. 88 (W.D. Tex. Oct. 14, 2022). Jawbone further argues that judicial economy weighs against transfer. ECF No. 64 at 14. Meta replies that despite this Court previously conducting claim construction, Jawbone "vitiates any efficiencies by re-litigating all claims," including claims previously found indefinite. ECF No. 70 at 9.

The relevant inquiry under this factor is whether the circumstances in either forum would make trial of the matter easier, more expeditious, or less expensive. *Volkswagen II*, 545 F.3d at 314. The Court notes that first, while there are no co-pending suits, this Court previously conducted claim construction on claim terms in four of the patents-in-suit here ('080, '357, '213, and '611 patents), notably the *same* claim terms at dispute in the present case. *See Jawbone Innovations, LLC v. Google LLC*, No. 6:21-cv-00985-ADA, ECF No. 88 (W.D. Tex. Oct. 14, 2022). Meta cannot plausibly maintain that any efficiencies in this forum are unavailing when the alternative—sending this case to a new district, where a new judge would have to get up to speed on the patents

and technologies at issue—would create significantly more inefficiencies. Because this Court is already intimately familiar with many, if not all, of the patents-at-issue, judicial economy weighs against transfer in the present case. *See In re Google LLC*, No. 2024-117, 2024 WL 1460003 (Fed. Cir. Apr. 4, 2024) ("[T]he district court reasonably found that judicial economy considerations disfavor transfer in light of the trial court's familiarity with the patents and technology from its substantial involvement with prior litigation."). For these reasons, the Court finds this factor disfavors transfer.

### C. Public Interest Factors

#### i. *Administrative Difficulties Flowing from Court Congestion*

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020). It considers the "[t]he speed with which a case can come to trial and be resolved." *In re Genentech, Inc.*, 566 F.3d at 1347. In this analysis, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id*. The Court notes that the Federal Circuit recently concluded that this factor should not weigh against transfer when plaintiff "is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution." *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023). This factor normally weighs against transfer when the "case appears to be timely proceeding to trial before the" transferee district. *In re TikTok,* 85 F.4th at 364.

Meta argues this factor weighs slightly in favor of transfer because while the WDTX and the NDCA have similar median times to trial, the WDTX has a heavier caseload with more pending patent cases on its docket. ECF No. 28 at 14. Additionally, Meta argues that Jawbone is not

engaged in product competition in the marketplace, and thus there is less urgency to case resolution. *Id*. In response, Jawbone points to a ten-month differential in median times to trial between the two districts (with a shorter time in the WDTX) and notes that its Chief Scientist, Dr. Burnett, is ███████████████████████████████████ which would compete in the marketplace. ECF No. 64 at 14−15. The Federal Circuit, at least as of February 2023, already found that Jawbone was "not engaged in product competition in the marketplace," and although Jawbone may *eventually* enter the product marketplace, it appears to have not done so yet—at least not in a significant way. *In re Google LLC*, 58 F.4th 1379, 1383. Thus, this Court feels bound under existing precedent to find this factor neutral. *See id*.

### ii. *Local Interest in Having Localized Interests Decided at Home*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent cases "are not a fiction." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and the events that gave rise to a suit.'" *In re Apple*, 979 F.3d at 1344 (emphasis in original) (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)). Courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id*. Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as

by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)).

Meta argues the NDCA has a strong local interest in this case because the Accused Features and the Asserted Patents were primarily designed and developed either there or in Washington. ECF No. 28 at 15. In response, Jawbone emphasizes that development of the Accused Products occurred at least partially in Washington, identifies employees located nationwide that work on the accused technology (including in the WDTX), and disputes that all the Asserted Patents were developed in California. ECF No. 64 at 14. Indeed, only two named inventors on the '213 and '611 patents (Zhinian Jing and Nicolas Petit) may reside in California. *Id*. at 4, 13. While this Court acknowledges that the Federal Circuit previously found that Jawbone has no "meaningful presence in the Western District of Texas," that finding was heavily based on Jawbone having incorporated in Texas only just before filing its suit in 2021. *See In re Google*, 58 F.4th at 1384. Prior to the present suit being filed in 2023, Jawbone has been incorporated in Texas for nearly two years, maintaining an office and directing operations from therein. *See* ECF No. 64 at 2 ("Jawbone markets, procures, distributes, and sells audio products from that office."); *Id*. at 14 ("Jawbone is a Texas entity that maintains an office in WDTX and receives and distributes products from WDTX."). Upon these different facts, this Court finds this factor neutral.

### iii. *Familiarity of the Forum with the Law That Will Govern the Case*

Meta again argues that this factor favors transfer. In support of its argument, ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ECF No. 28 at 15. Since ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮, Meta argues that the NDCA would be more familiar. *Id*. However, as

Jawbone notes, there are no active disputes ███████████████████████████

████████████████████████████████████████████████████████████████████

███████████████. ECF 64 at 15. Meta's argument that this factor favors transfer is tenuous

at best. Thus, this Court finds this factor to be neutral.

### iv. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

Jawbone and Meta agree that this factor is neutral—there are no potential conflicts here.

ECF No. 28 at 15; *See* ECF No. 64 at 14–15. The Court agrees.

## V. **CONCLUSION**

Having considered the private and public interest factors, the Court finds that two private

interest factors—availability of compulsory process and all other practical problems that make trial

of a case easy, expeditious, and inexpensive—weigh against transfer because of the number of

third-party witnesses located in Texas and this Court's prior experience and effort expended with

the Asserted Patents. The remaining private interest factors are found to be neutral. Additionally,

the Court finds that each of the public interest factors are neutral. As this Court has said before, a

decision to uproot litigation and transfer is not the consequence of a simple math problem. Instead,

a moving party must show that the transferee forum is a *clearly* more convenient forum. And

considering the numerous witnesses, third parties, and connections with both the WDTX and

NDCA forums, this decision was not taken lightly. Ultimately, the Court finds that Meta has failed

to establish that the NDCA would be a clearly more convenient forum to resolve the issues here.

Meta's Motion to Transfer Venue (ECF No. 28) is therefore **DENIED**.

**SIGNED** this 7th day of August, 2024.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

21